UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

*********************************************

Plaintiff,
JANE DOE,                                                JURY TRIAL REQUESTED
v.

Defendants,
RUSSELL HOLDEN and
SHAKER REGIONAL SCHOOL DISTRICT

*********************************************

## **COMPLAINT**

I.  Introduction

1. This case includes Title IX and § 1983 claims, as well as common law claims for school failure to protect students from sexual abuse in loco parentis. The defendant principal, in the course of his duties for the defendant school district, knew of credibly reported sexual contact between a high school teacher and a student, but failed to investigate and allowed the teacher to continue to have access to the student in after school activities in the school building, where ongoing assaults occurred.

II.  Parties

2. Jane Doe is a resident of Massachusetts.

3. Russell Holden is a resident of New Hampshire

4. Shaker Regional School District [hereafter "SRSD"] is the district within SAU 80, and its business office is in Belmont, New Hampshire.

5. Pursuant to RSA 194:1-a and RSA 194-C:3, SAU 80 and SRSD are considered the same school district.

1

6. Both SAU 80 and SRSD are corporations with the power to sue and be sued for the purposes of this lawsuit.  See RSA 194:2 and RSA 194-C:1, II.

III.  Jurisdiction

7. This Court has jurisdiction over the Plaintiff's claims for violation of federal law under 28 U.S.C. § 1331.

8. This Court has supplemental jurisdiction over the Plaintiff's state-law based claims arising from the same case or controversy as her federal claims.  See 28 U.S.C. § 1367

9. Venue is proper in this Court because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in New Hampshire.  See 28 U.S.C. § 1391.

IV.  Facts

   **A. SRSD, Superintendent Cozort, Principal Russ Holden and the Hiring of Teacher, Phillip Anderson**

10. In 2009, Plaintiff was a high school student at Belmont High School [hereafter "Belmont High"].

11. Belmont High was the sole high school within SRSD.

12. SRSD was governed by the Shaker Regional School Board [the "Board"] who elected SAU 80 Superintendent, Michael Cozort, in accordance with SRSD Policy CB.

13. The Board enacted SRSD policies and Cozort's duty was to implement them, including by supervising SRSD school administrators.  See SRSD Policy BDD and NH Ed 303.01.

14. Superintendent Cozort supervised Russell Holden, the principal of Belmont

High. See SRSD Policy CFA and NH Ed 302.02.

15. Mr. Holden meanwhile was responsible for providing a safe learning environment at Belmont High and for selecting and supervising Belmont High teachers and support personnel. See NH Ed 304.01 and 506.04 (f).

16. Mr. Holden interviewed and nominated teachers, who were in turn considered for approval by the Superintendent and Board. See RSA 189:39.

17. In spring 2009, Mr. Holden interviewed Phillip Anderson, a prospective Social Studies Teacher for Belmont High for the 2009-2010 school year.

18. In July 2009, Holden nominated Mr. Anderson for employment.

19. Mr. Anderson began employment at Belmont High in August 2009.

20. He was assigned to teach US History, Honors.

21. He was also permitted to serve as a volunteer assistant coach to the Belmont High, Girls Cross-country team.

**B. Phillip Anderson Pursues a Sexual Relationship with Plaintiff.**

22. The Plaintiff met Mr. Anderson on the first day of class in the fall of 2009.

23. She was fifteen years old, a sophomore, and a student in Anderson's US History class.

24. Plaintiff also encountered Anderson as an athlete on the Girls Cross-country team.

25. The Cross-country season ran from September through October 2009.

26. In class, Anderson favored Plaintiff such that she viewed herself to be a "teacher's pet."

27. Plaintiff learned, however, on the Cross-country team and through emails

Anderson sent as the Cross-country season progressed, that Anderson was interested in her in a sexual way.

28. Acting as assistant Cross-country coach, Anderson flirted with Plaintiff, by complimenting Plaintiff on her appearance, joining her on special practice runs, and driving her home from practice in his car.

29. Anderson also sent emails to Plaintiff from his personal email account that became increasingly suggestive of sex.

30. In one email, Anderson described getting an erection during a massage.

31. Mr. Anderson further encouraged the Plaintiff to visit him in his classroom after Cross-country practice.

32. During one of these visits, in October 2009, Anderson kissed the still fifteen-year-old Plaintiff on the lips.

33. The visits and kissing encounters continued through October 2009.

34. Plaintiff knew that the conduct was "wrong" but was afraid to object to and reject her teacher.

35. Thus the encounters caused the Plaintiff emotional distress that interfered with her high school experience.

36. Nearing the end of October and the end of Cross-country season, Belmont High Cross-country head coach, John Goegel, witnessed the Plaintiff and Anderson alone together in Anderson's classroom after practice.

37. The classroom lights were turned off such that Plaintiff and Anderson were alone in the dark.

38. Goegel was concerned that Anderson was engaging in sexual activity with

Plaintiff.

39. He reported his suspicion to Principal Holden along with a pattern that Goegel had noticed, that Anderson was flirting with and seemed "obsessed" by Plaintiff.

40. Principal Holden indicated he would investigate whether Anderson's conduct with Plaintiff.

41. Goegel informed Holden that he would no longer allow Anderson to serve as an assistant coach.

42. Holden agreed given the seriousness of Goegel's report and allegations.

### C.  Holden Fails to Investigate and Assigns Anderson to Additional, Extra-curricular duties, such that Anderson's Conduct Escalates

43.  Though Holden indicated to Goegel that he would take his report seriously, Holden did not perform a thorough investigation of Anderson's conduct with Plaintiff.

44.  Holden did not interview the Plaintiff.

45. Holden did not contact the Plaintiff's parents to inquire about any behavior changes in Plaintiff or any discussion, at home, of Anderson.

46. Holden did not meet again with Geogel regarding Anderson.

47. Holden did not report any findings or conclusions to Goegel regarding his report that Plaintiff was alone in the dark with her flirtatious teacher.

48.  Moreover, at or around the same time as Goegel's report of suspected sexual activity between Anderson and Plaintiff, the Board and Superintendent Cozort executed an "extra-curricular" contract with Anderson, to employ him as a faculty advisor to the Belmont High Drama program.  See Exhibit A.

49. Upon information and belief, Principal Holden was aware of Anderson's

5

appointment to the drama position.

50. Anderson's application documents, submitted to Holden, repeatedly refer to his expertise in drama.

51. Holden was responsible for managing staffing assignments at Belmont High.

52. The Drama position, requiring Anderson to produce "2 performances" following his October 2009 retention, necessitated that he be alone with students, after school hours, in rehearsals.

53. Upon information and belief, Principal Holden was aware of these requirements.

54. Notwithstanding this, and Goegel's report of suspected sexual contact between Plaintiff and Anderson in late October 2009, neither Holden nor any school official interfered with Anderson's appointment to the Drama Director position.

55. Nor did Holden or any school official closely supervise Anderson in performance of his extra-curricular duties.

56. The Plaintiff, still age-fifteen, auditioned in late fall 2009 and early spring 2010 for the Belmont High theater productions

57. Anderson cast Plaintiff in both productions, casting her as the lead in the spring production.

58. During rehearsals, Anderson engaged in sexual activity with the Plaintiff.

59. For example, behind the scenes, he groped Plaintiff touching her genitals.

60. Similarly, while students were on stage and Anderson and Plaintiff were alone in the wings, Anderson grabbed Plaintiff and rubbed his erect penis on her buttocks and genitals.

**D**. **Holden Maintains Anderson's Employment Allowing Anderson to Continue his Abuse of Plaintiff**

6

61. On or about April 12, 2010, Mr. Anderson submitted his resignation.

62. Principal Holden accepted the resignation but allowed Anderson to continue to teach for the remainder of the school year or into June 2010.

63. Also in April 2010, Plaintiff began dating a student and reported the same to Anderson.

64. Anderson responded that he would kill himself.

65. Plaintiff's relationship with the student ended in May 2010, causing Anderson to beg the Plaintiff to reinitiate their sexual relationship.

66. Plaintiff agreed to take a walk with Anderson along the Cross-country trail at Belmont High.

67. Anderson pulled Plaintiff into a wooded area and took off his clothes exposing himself to her.

68. Anderson's sexual touching, threats of self-harm, and exposure of himself on school grounds caused the Plaintiff great anxiety and fear of humiliation, interfering with her high school education throughout her sophomore year.

F. **Plaintiff Did Not Learn that Holden Had Reason to Know of Her Abuse until October 2024.**

69. Though Anderson ceased teaching at Belmont High as of the end of June 2010 and obtained teaching employment in a school in Vermont, he continued to engage in sexual activity with the Plaintiff, including oral sex, until August 2011.

70. Anderson also solicited and obtained sexual images from the Plaintiff.

71. Anderson wrote a reference for Plaintiff for college admission and used it to intimidate Plaintiff from disclosing his sexual contact her; Plaintiff was afraid that

if she disclosed Anderson's sexual contact, the reference and her college admission would be seen as illegitimate.

72. It took several years for Plaintiff to understand that she had been exploited by Anderson, that she was not at fault for Anderson's abuses, and that she could seek legal relief related to the abuses.

73. In late October 2024, Plaintiff retained undersigned counsel to pursue civil action related to Anderson's abuse.

74. Counsel proceeded to interview John Goegel, to determine whether he had witnessed any inappropriate behavior by Anderson to corroborate Plaintiff's account.

75. Goegel reported to counsel, not only that he had witnessed behavior of a suspected sexual nature, but that he had reported it to Holden whom he hoped would take action to investigate and alleviate any abuse.

76. This was the first time Plaintiff had information suggesting that Holden had reason to know of her sexual abuse and that he had failed to take steps to protect her.

77. Plaintiff did <u>not</u> therefore have notice and reason to know, before October 2024, that Holden and SRSD bore liability for her ongoing sexual abuse, from 2009 to 2011.

V.     Counts

**COUNT ONE (against SRSD)**

**VIOLATION OF TITLE IX, 20 U.S.C. § 1681 *et seq.***
**SEXUAL HARASSMENT – HOSTILE EDUCATIONAL ENVIRONMENT**

78. Plaintiff re-alleges and incorporates by reference the allegations in previous and

8

proceeding paragraphs as if fully set forth herein.

79. Upon information and belief, at all times relevant to this action, SRSD received federal financial assistance.

80. SRSD subjected Plaintiff, Jane Doe, to a sexually hostile educational environment in violation of Title IX.

81. To prevail on a claim of sexually hostile educational environment under Title IX, a Plaintiff must show: (1) she was subject to harassment that was severe, pervasive, and objectively offensive to the reasonable observer (2) that the harassment caused the plaintiff to be deprived of educational opportunities or benefits; (3) the federal funded school knew of the harassment in its programs or activities; and (4) it was deliberately indifferent to the harassment such that its response (or lack thereof) was clearly unreasonable in light of the known circumstances. Porto v. Town of Tewksbury, 488 F.3d 67, 72–73 (1st Cir. 2007); see also Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274 (1998)(school liable for money damages in private litigation under Title IX for teacher/student sex harassment if school had actual knowledge of sexual misconduct and was deliberately indifferent).

82. The harassment to which Plaintiff was subjected was severe, pervasive, and objectively offensive such that it deprived her of access to educational benefits.

83. Plaintiff's teacher sent her lewd emails, kissed her, groped and fondled her, threatened to harm himself upon learning that she had an age-appropriate relationship, and exposed himself to her, on school grounds, all during Plaintiff's sophomore year.

84. These severe and pervasive incidents caused distress and disruption to Plaintiff's high school education.

85. Plaintiff did not discover until October 2024 that Belmont High principal, Russ Holden, knew of facts suggesting her sexually hostile learning environment, including her coach's credible report that he had caught Plaintiff with Anderson in his darkened classroom after Anderson had exhibited a pattern of "obsession" with Plaintiff.

86. Holden was deliberately indifferent to these facts and failed to take action to investigate or remediate.  To the contrary, he assigned Anderson *extra* duties giving Anderson greater opportunity to abuse Plaintiff.

87. Holden's deliberate indifference to John Goegel's report caused Plaintiff's sexually hostile environment to not only continue but to escalate, causing Plaintiff greater harm.

88. Plaintiff's claim is not time barred where Title IX does not contain a statute of limitations and courts ordinarily borrow the forum state's statute of limitations for personal injury actions. Czerwienski v. Harvard Univ., 666 F. Supp. 3d 49, 77 (D. Mass. 2023).

89. The New Hampshire Supreme Court has ruled that an action for institutional liability for sexual abuse might be brought long after the abuse occurred so long as it is timely brought after discovery, that the abuser's employer had reason to know of the abuse but failed to intervene or prevent it.  See Troy v. Bishop Guertin High Sch., 176 N.H. 131, 138 (2023).

## COUNT TWO (against Holden)

**BREACH OF PRINCIPAL'S DUTY TO PROTECT STUDENTS FROM SEXUAL ABUSE BY SCHOOL EMPLOYEES**

90. Plaintiff re-alleges and incorporates by reference the allegations in previous and proceeding paragraphs as if fully set forth herein.

91. Schools share a special relationship with students entrusted to their care, which imposes upon them certain duties of reasonable supervision. Marquay v. Eno, 139 N.H. 708, 717 (1995).

92. Though a principal rarely has primary supervisory authority over a student, because it is the school to which parents turn over custody of their children and from which they expect safety and because the principal is charged with overseeing all aspects of the school's operation, a duty of supervision is owed by the principal to each student. Id. at 718.

93. Where the principal knows or should know that a particular school employee poses a threat to a student, entrustment of the student to the care of that employee will not satisfy the duty of reasonable supervision. Id.

94. Holden breached his duty to protect Plaintiff from sexual abuse by Anderson: where he agreed that Anderson should be removed from his position as running coach but otherwise failed to investigate Goegel's report of suspected abuse, and subsequently permitted Anderson to serve as a Drama Director, giving Anderson greater, unsupervised access to Plaintiff.

95. These courses of conduct were within Holden's scope of duties as principal of Belmont High, where Holden was responsible for both student safety and staffing assignments.

11

96. Holden could <u>not</u> reasonably believe in the legality of his actions, in failing to investigate and in assigning Anderson to a role affording him greater unsupervised access to Plaintiff.

97. That Holden agreed that Anderson should be removed as a Cross-country coach emphasizes a lack of reasonable belief that Anderson should alternately serve as Plaintiff's drama coach.

98. Holden's actions were "wanton, malicious, or oppressive" so as to support enhanced compensatory damages.

99. Plaintiff suffered assault and emotional harm as a result of Holden's entrustment of her to Anderson.

100. Plaintiff's claim against Holden is not time-barred as Plaintiff learned only as recently as October 2024 that Holden knew that Anderson posed a threat to her and nevertheless entrusted her to his care. See <u>Troy v. Bishop Guertin High Sch.</u>, 176 N.H. 131, 138 (2023).

## COUNT THREE (against SRSD)

**VICARIOUS LIABILITY FOR PRINCIPAL'S BREACH OF HIS DUTY TO PROTECT PLAINTIFF**

101. Plaintiff re-alleges and incorporates by reference the allegations in previous and proceeding paragraphs as if fully set forth herein.

102. An employer may be held vicariously responsible for the tortious acts of its employee if the employee was acting within the scope of his employment when his tortious act injured the plaintiff. <u>Porter v. City of Manchester</u>, 155 N.H. 149, 152 (2007).

103. Holden's tortious acts, in failing to investigate a credible report that

Anderson was a threat to Plaintiff, and in discontinuing one of Anderson's work assignments only to allow a different assignment in which Plaintiff would be entrusted, were within the scope of Holden's duties and caused injury to Plaintiff.

104. As discussed above, these actions were <u>not</u> performed with a reasonable belief in the legality of the actions.

105. Rather, the actions were "wanton, malicious, or oppressive" so as to support enhanced compensatory damages.

106. For the reasons discussed above, Plaintiff's claims are not time-barred. <u>See</u> <u>Troy v. Bishop Guertin High Sch.</u>, 176 N.H. 131, 138 (2023).

### COUNT FOUR (against Holden)

**ACTION UNDER 42 U.S.C.§ 1983 FOR STATE-CREATED DANGER IN VIOLATION OF 14TH AMENDMENT SUBSTANTIVE DUE PROCESS GUARANTEE**

107. Plaintiff re-alleges and incorporates by reference the allegations in previous and proceeding paragraphs as if fully set forth herein.

108. A state-created-danger claim has four basic elements; a plaintiff must establish that (1) "a state actor ... affirmatively acted to create or enhance a danger to the plaintiff;" (2) "the act or acts created or enhanced a danger specific to the plaintiff and distinct from the danger to the general public;" (3) "the act or acts caused the plaintiff's harm;" and (4) "the state actor's conduct, when viewed in total, shocks the conscience." <u>Wadsworth v. Nguyen</u>, 129 F.4th 38, 64 (1st Cir. 2025).

109. As to the first element, Russ Holden enhanced a danger to the Plaintiff, by allowing Anderson to undertake the Drama Director position after he had

received Goegel's report of suspected sexual activity between Anderson and Plaintiff in Anderson's classroom.

110. As to the second element, the danger of sexual abuse by Anderson was specific to the Plaintiff whom Anderson had been reportedly "obsessively" pursuing.

111. As to the third element, Holden's assignment of Anderson to the Drama Director role giving Anderson greater, unsupervised access to the Plaintiff, harmed the Plaintiff in that Anderson groped and fondled Plaintiff during play rehearsals, causing the Plaintiff distress.

112. As to the fourth element, Holden's conduct, in assigning Anderson to the Drama Director role after failing to investigate Goegel's report of suspected sexual abuse, shocks the conscience. Holden had the opportunity to make an "unhurried judgment" as to how to respond to Goegel's report. See Irish v. Fowler, 979 F.3d 65, 75 (1st Cir. 2020). Therefore, the Plaintiff need only show that Holden "actually knew of a substantial risk of serious harm and disregarded that risk" for Plaintiff to satisfy the "shocks the conscience" standard. Id.

113. Goegel credibly reported that Plaintiff was at risk while alone in Anderson's darkened classroom after a pattern of flirtatious and obsessive behavior by Anderson. Holden acknowledged this risk when he agreed that Anderson should be discharged from his Cross-country responsibilities. Holden was deliberately indifferent to the acknowledged risk of harm that Anderson presented to Plaintiff, over the course of months of rehearsals for two productions in the Drama program.

114. When the federal court borrows the state statute of limitations for the purpose of a §1983 claim, the date on which the limitations period starts to run is also determined by the state law defining the "application" of the limitations period. Carreras-Rosa v. Alves-Cruz, 127 F.3d 172, 174 (1st Cir. 1997).

115. The discovery rule established for school sex abuse cases in Troy v. Bishop Guertin High Sch., 176 N.H. 131, 138 (2023) therefore applies to Plaintiff's § 1983 claims.

**COUNT FIVE (against Holden)**

**42 U.S.C.§ 1983 ACTION FOR SUPERVISOR LIABILITY UNDER 14TH AMENDMENT SUBSTANTIVE DUE PROCESS CLAUSE**

116. Plaintiff re-alleges and incorporates by reference the allegations in previous and proceeding paragraphs as if fully set forth herein.

117. A supervisor's liability under § 1983 for 14th Amendment, substantive due process violation must be premised on his own acts or omissions and does not attach automatically even if a subordinate is found liable. Wadsworth v. Nguyen, 129 F.4th 38, 62–63 (1st Cir. 2025)

118. Under such a theory, a supervisor may be brought to book even though his actions have not directly abridged someone's rights; it is enough that he has created or overlooked a clear risk of future unlawful action by a lower-echelon actor over whom he had some degree of control. Id.

119. Liability attaches where "(1) the behavior of [the] subordinates results in a constitutional violation, and (2) the [supervisor]'s action or inaction was affirmative[ly] link[ed] to that behavior in the sense that it could be characterized

as supervisory encouragement, condonation or acquiescence[,] or gross negligence amounting to deliberate indifference." Id.

120.    For the reasons discussed supra, Holden may be held liable as a supervisor facilitating violation of Plaintiff's substantive due process rights to bodily integrity and to be free from state action shocking the conscience.

121.    With actual knowledge that Anderson was pursuing and isolating Plaintiff, after hours in his darkened classroom, Holden acknowledged risk to Plaintiff, by approving Anderson's discharge from Cross-country duties, but avoided any further investigation and proceeded to allow Anderson to engage with Plaintiff in a more intimate Drama setting.

122.    Plaintiff was sexually assaulted by Anderson in the course of his Drama assignment.

123.    Holden's supervisory conduct amounts, at minimum, to gross negligence under these circumstances.

WHEREFORE Plaintiff respectfully requests that this honorable court:

a) schedule this matter for jury trial;

b) issue judgment in favor of Plaintiff;

c) award compensation for Plaintiff's physical pain and suffering;

d) award compensation for Plaintiff's emotional losses;

e) award enhanced compensatory damages;

f) award punitive damages;

g) award Plaintiff's attorney's fees and costs;

h) award interest; and

i)  grant such other relief as is just and proper.

                                                         Respectfully submitted,

                                                        JANE DOE
                                                        By her attorneys,
                                                        BACKUS, MEYER & BRANCH, LLP

Date: May 2, 2025                By:       */s/Megan Douglass*_____
                                                       Megan Douglass, Esq. Bar #19501
                                                         116 Lowell Street
                                                         Manchester, NH 03104
                                                         (603) 668-7272
                                                         mdouglass@backusmeyer.com